Van Brunt, P. J.
The grounds upon which the appellants base their appeal are, first, that Mrs. Hutchinson was not a testamentary trustee and, therefore, not removable as such; and, second, that, even if she was such testamentary trustee, no grounds existed for the action of the learned surrogate.
It is well established that no particular form of words is necessary to create a trust, but it is sufficient if a purpose within the statute is embraced in the language used. Vernon v. Vernon, 53 N. Y., 351; Morse v. Morse, 85 id., 60.
But in the case at bar it is not necessary to make this extreme rule, in order to hold that there was an evident intention upon the part of the testator that his executrix should also assume the duties of testamentary trustee.
It is urged that the testator intended to create a life estate in his executrix with remainder over, which estate was charged with certain liens. But it is difficult to reconcile this view with the provisions of the will, which could only be carried out by a trustee.
The provision for Mrs. Southgate; the setting apart in *11 some safe investment the sum of twenty thousand dollars for Charles, to be paid to him when he should attain the age of twenty-one years, the interest on which was to be applied to the expense of his maintenance and education; the direction to pay or invest m some safe or profitable manner the sum of five thousand dollars for the separate use and benefit of the testator's sister Mary during her life, and of her daughter Lizzie after her death, all required the intervention of a trustee, and as such the testator intended his executrix to act.
The whole scope of the will indeed seems to imply that the widow of the testator is not to have an absolute life estate in his estate, but she is to hold the same in trust for her own support and for that of the testator’s children, and that she is to manage the same as executrix and not as life tenant.
The next question to be considered is, did sufficient grounds exist for the removal of the trustee.
It is not necessary to go over all the grounds as to which complaint has been made, although in many instances there seems to have been a disregard of the ordinary rules which should govern trustees in the administration of their trusts. Many of these transgressions are claimed to have been condoned or assented to by the petitioner, but there remains at least one of great gravity, as to which condonation has not been established
Mr. Hiram Hutchinson for years prior to the time of his death had been engaged in business, and was so engaged at the time of his death, and by his will he authorized and empowered his executrix among other things, by and with the advice of his sons Alcander and Hiram, to terminate any business connection which existed at his decease, or which should continue after by virtue of arrangements made by him during his life time.
In this clause no power is given to Ms executrix by the testator to continue any business beyond such as might be necessary because of arrangements made during the testator’s life time.
The executrix seems, however, to have acted upon the assumption that she had the power to continue the business of the testator indefinitely, and in 1816 in order to cut off claims of the petitioner’s husband, entered into a co-partnership which was only to commence in 1882 and terminate in 1892.
The idea that the executrix had the right to continue the business of her husband indefinitely and to risk his whole estate therein, does not find countenance in the language of the will. The only language in the will which is claimed to support this view, is the power given to terminate any *12 business connections which existed at the time of the death of the testator.
This clause was entirely unnecessary. Such connections terminated by the death of the testator without any action upon the part of his executrix, and could only continue by virtue of some agreement on his part that they should so-continue after his death, and even such business connections the executrix was authorized to terminate,
Upon the right to terminate cannot be built up a right to continue where such a continuance would be an express violation of duty
It' must be very plain provisions in a will which will authorize an executor or trustee to subject a large part of an estate to the hazards of a commercial business, and no such authorization can be found in the will of Mr. Hutchinson.
The management of this estate would seem to have been to a large extent confided to Alcander Hutchinson, and that it was to further his interests that much which is hable to criticism has been done
It may be true, and it probably is, that all of the children were willing to connive at the violation of duty by the executrix as long as it seemed their interest so to do; but that does not deprive them of the right of objection as to acts which they have not condoned or of the right to insist that the estate shall not be subjected to further hazard.
The question as to whether or not Mrs. Hutchinson had a right to all the profits has no bearing upon this question, as any one of the cestuis que trust had the right to demand that the body of the estate should not be put in peril.
We are of the opinion, therefore, that the surrogate was justified m the order and decree he has made, and the same should be affirmed, with costs.
Bartlett and Lawrence, JJ., concur.